E-FILED
Skagit County Clerk
Skagit County, WA
6/12/2025

1
2
3
4
5
6

STATE OF WASHINGTON

7          SUPERIOR COURT OF WASHINGTON FOR THE COUNTY OF SKAGIT

8  MARATHON PETROLEUM COMPANY
   LP; TESORO REFINING &                    Case No. 25-2-00502-29
9  MARKETING COMPANY LLC,
              *Plaintiffs*,                  **AMENDED COMPLAINT**
10
          v.
11 ARKEMA, INC.; BASF CORPORATION;
   EIDP, INC.; THE CHEMOURS
12 COMPANY; TYCO FIRE PRODUCTS;
   WILLIAMS FIRE AND HAZARD
13 CONTROL, INC.; ABC
   CORPORATIONS 1-20,
14            *Defendants*.

15

16              **I.  INTRODUCTION**

17        1.    This case arises from the per- and polyfluoroalkyl substance ("PFAS")

18 contamination caused by PFAS-containing aqueous film forming foam ("AFFF") at the Anacortes

19 Refinery located at 10200 West March Point Road, Anacortes, Washington 98221 ("Refinery").

20 The Refinery is owned by Tesoro Refining & Marketing Company LLC ("Tesoro"), a related

21 entity to Marathon Petroleum Company LP ("Marathon Petroleum"). Tesoro and Marathon

22 Petroleum are collectively referred to as "Marathon."

23        2.    The Refinery sits on a peninsula surrounded by the Puget Sound and the Swinomish

24 Reservation. There are no military installations or airports near the Refinery.

25        3.    AFFF is a type of firefighting foam that has been used to suppress fires during

26 emergency situations and during fire training exercises and equipment testing. This suit concerns

AMENDED COMPLAINT - 1

AFFF containing certain long-chain PFAS: PFOS, PFOA, and their precursors[1] (collectively, "Long-Chain PFAS"). AFFF that contains Long-Chain PFAS is hereafter referred to as "Long-Chain PFAS AFFF."[2]

4.    The Refinery has been contaminated by Long-Chain PFAS. The Long-Chain PFAS contamination at the Refinery arises entirely from the manufacturer, sale, distribution, and use of Long-Chain PFAS AFFF commercially purchased by Marathon from the AFFF Manufacturers (defined below) for civilian use at the Refinery. These Long-Chain PFAS AFFF, such as Universal Plus 3/6% AR-AFFF and Thunderstorm FC-601A 1/3% AR-AFFF, *were not* developed for military use, *did not* meet the applicable military specification ("MilSpec"), and *were not* qualified on the Qualified Products List ("QPL").[3]

5.    Given the location of the Refinery, no MilSpec or QPL AFFF can be the cause of the Long-Chain PFAS contamination at or damage to the Refinery.

6.    Two different groups of defendants caused the Long-Chain PFAS contamination at the Refinery: (1) the Long-Chain PFAS manufacturers, including their successors-in-interest: Arkema, BASF, Ciba, Chemours, and Old DuPont (collectively, "PFAS Manufacturers"); and (2) the Long-Chain PFAS AFFF manufacturers, including their successors-in-interest: Williams and Tyco (collectively, "AFFF Manufacturers"). The PFAS Manufacturers collectively with AFFF Manufacturers are referred to as the "Manufacturers."

7.    Ever since Long-Chain PFAS AFFF was first developed in the 1960s, the Manufacturers have actively misled—*e.g.,* by telling half-truths or failing to provide information

---

[1]    A precursor chemical is a chemical capable of transforming into another compound through a chemical reaction and/or degradation in the environment.

[2]    Long-Chain PFAS AFFF includes the many different types of AFFF that contain Long-Chain PFAS such as the following: Alcohol-Resistant Aqueous Film-Forming Foam ("AR-AFFF"); Fluoroprotein Foam ("FP"); Alcohol-Resistant Fluoroprotein Foam ("FPAR"); Film-Forming Fluoroprotein Foam ("FFFP"); and Alcohol-Resistant Film-Forming Fluoroprotein Foam ("AR-FFFP").

[3]    For avoidance of doubt, in this Amended Complaint, Marathon does not seek to recover and expressly disclaims recovery for damages or contamination caused by QPL or Milspec AFFF or any AFFF created under the direction of the federal government at the Refinery.  Marathon is not aware of any such contamination at the Refinery.

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

1    about known risks—federal and state regulators, their customers, like Marathon, and the public at

2    large about the true harms associated with their Long-Chain PFAS and/or Long-Chain PFAS

3    AFFF. For example, the Manufacturers have claimed: (i) that their Long-Chain PFAS are

4    biodegradable (they knew they were not), (ii) that their Long-Chain PFAS and/or Long-Chain

5    PFAS AFFF do not harm the environment (they knew they do), and (iii) that non-3M Long-Chain

6    PFAS and Long-Chain PFAS AFFF does not contain or break down into PFOA (they knew they

7    do).

8        8.    The Manufacturers chose profits over their customers. While the Manufacturers

9    filled their balance sheets with huge profits from the manufacture, distribution, and sale of Long-

10    Chain PFAS and/or Long-Chain PFAS AFFF, their customers, like Marathon, suffered from the

11    release of Long-Chain PFAS on their property and the resulting environmental contamination and

12    property damage.

13        9.    More specifically, starting in the 1980s, Marathon purchased and used non-MilSpec

14    and non-QPL Long-Chain PFAS AFFF from National Foam[4] and Williams.

15        10.    Washington has listed certain Long-Chain PFAS as hazardous substances under the

16    Model Toxics Control Act ("MTCA"), established MTCA cleanup levels for those PFAS, and

17    issued State Action Levels ("SALs") for those PFAS in drinking water. Similarly, EPA has issued

18    maximum contaminant level ("MCL") for certain Long-Chain PFAS in drinking water and

19    designated two Long-Chain PFAS (PFOS and PFOA) as hazardous substances under the

20    Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

21        11.    The Long-Chain PFAS contamination at the Refinery is, upon information and

22    belief, above Washington regulatory standards, thereby requiring Marathon to investigate, clean-

23    up, and remediate the contamination.

24        12.    Through this suit, Marathon seeks to hold the Manufacturers accountable for the

25    _____

26    [4]    Due to the bankruptcy proceedings involving National Foam and its successors in interest, those entities are excluded from this Amended Complaint.

AMENDED COMPLAINT - 3

environmental contamination and property damage at the Refinery caused by the Manufacturers' Long-Chain PFAS and/or Long-Chain PFAS AFFF.

13.    Marathon raises the following causes of actions in this suit: (1) a private cause of action against the AFFF Manufacturers under MTCA, (2) a private cause of action against all the Manufacturers for violations of the Washington Consumer Protection Act ("WCPA"), (3) a cause of action for fraud against all the Manufacturers, (4) a cause of action for negligent misrepresentation against all the Manufacturers, (5) a cause of action for product liability (design defect) against all the Manufacturers, (6) a cause of action for product liability (failure to warn) against all the Manufacturers, (7) a cause of action for trespass against all the Manufacturers, (8) a cause of action for nuisance against all the Manufacturers, and (9) a cause of action for declaratory judgment

14.    Marathon seeks: (1) actual and compensatory damages; (2) remedial action costs under MTCA; (3) treble damages under the WCPA and RCW 4.24.630; (4) attorney fees and litigation costs and expenses under MTCA, WCPA, and RCW 4.24.630; (5) a declaration that the Manufacturers are liable for (a) all future remedial action costs under MTCA, including but not limited to future investigation, remediation, and restoration costs, and (b) any third-party claims asserted against Marathon for the Long-Chain PFAS contamination at the Refinery; and (6) such equitable relief as the Court may deem appropriate under law or equity. Within these categories of damages, Marathon seeks, for example, its costs: (i) to identify, investigate, respond to, and cleanup the Long-Chain PFAS contamination; (ii) to dispose of unused Long-Chain PFAS AFFF; (iii) to replace Long-Chain PFAS AFFF with an appropriate replacement; and (iv) related to property damage.

## II.  PARTIES

15.    Plaintiff Marathon Petroleum Company LP is a limited partnership comprised of three partners: Marathon Petroleum Corporation, a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Ohio;

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

1    general partner MPC Investment LLC, a limited liability company organized and existing under

2    the laws of the State of Delaware with its principal place of business located in the State of Ohio;

3    and Giant Industries, Inc., a corporation organized and existing under the laws of the State of

4    Delaware with its principal place of business located in the State of Ohio.

5          16.    Plaintiff Tesoro Refining & Marketing Company LLC is a limited liability

6    company organized and existing under the laws of the State of Delaware with its principal place

7    of business located in the State of Ohio. Tesoro is a wholly owned company of Western Refining

8    Southwest LLC, a limited liability company organized and existing under the laws of the State of

9    Delaware with its principal place of business located in the State of Ohio. Western Refining

10   Southwest LLC is a wholly owned limited liability company of Marathon Petroleum. Tesoro owns

11   the real property commonly known as the Anacortes Refinery.

12         17.    Defendant Arkema, Inc. ("Arkema") is a corporation organized and existing under

13   the laws of the State of Pennsylvania with its principal place of business located at 900 First

14   Avenue, King of Prussia, Pennsylvania 19406. Arkema is a successor in interest to Atochem North

15   America Inc., Elf Atochem North America, Inc., and Atofina Chemicals, Inc. (collectively with

16   Arkema, "Arkema"). Arkema designed, manufactured, marketed, promoted, distributed, and/or

17   sold fluorochemicals and/or fluorosurfactants containing Long-Chain PFAS used to manufacture

18   Long-Chain PFAS AFFF that was transported to and used, discharged, spilled, or otherwise

19   released at the Refinery, causing injury to Marathon's property. Arkema transacts business

20   throughout the United States, including in Washington.  Arkema is a corporation registered to do

21   business in the State of Washington.

22         18.    Defendant BASF Corporation ("BASF") is a corporation organized and existing

23   under the laws of the State of Delaware, with its principal place of business located at 100 Park

24   Avenue, Florham Park, New Jersey 07932. BASF is the successor-in-interest to Ciba, Inc. (f/k/a

25   Ciba Specialty Chemicals Corporation) ("Ciba"). Ciba manufactured, marketed, promoted,

26   distributed, and/or sold fluorochemicals and fluorosurfactants that contained PFAS used to

AMENDED COMPLAINT - 5

1   manufacture AFFF, and those fluorochemicals, fluorosurfactants, and AFFF were transported,

2   stored, used, handled, trained with, used to test equipment, released, spilled, otherwise released at

3   the Refinery, causing injury to Marathon's property. BASF transacts business throughout the

4   United States, including in Washington. BASF is a corporation registered to do business in the

5   State of Washington.

6        19.   Defendant Old DuPont (i.e., EIDP, Inc.)—formerly E. I. du Pont de Nemours and

7   Company—is a corporation organized and existing under the laws of the State of Delaware with

8   its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. Old

9   DuPont acquired Arkema and assumed its liabilities in 2002. Old DuPont designed, manufactured,

10   marketed, promoted, distributed, and/or sold fluorochemicals and/or fluorosurfactants containing

11   Long-Chain PFAS used to manufacture Long-Chain PFAS AFFF that was transported to and used,

12   discharged, spilled, or otherwise released at the Refinery, causing injury to Marathon's property.

13   Old DuPont transacts business throughout the United States, including in Washington. Old DuPont

14   is a corporation registered to do business in the State of Washington.

15        20.   Defendant The Chemours Company ("Chemours") is a corporation organized

16   under the laws of the State of Delaware with its principal place of business located at 1007 Market

17   Street, Wilmington, Delaware 19899. Old DuPont spun off its performance chemicals business,

18   including those businesses related to its manufacturer of PFAS, to Chemours in 2015. Chemours

19   assumed Old DuPont's Long-Chain PFAS related liabilities. Chemours designed, manufactured,

20   marketed, promoted, distributed, and/or sold fluorochemicals and/or fluorosurfactants containing

21   Long-Chain PFAS used to manufacture Long-Chain PFAS AFFF that was transported to and used,

22   discharged, spilled, or otherwise released at the Refinery, causing injury to Marathon's property.

23   Chemours transacts business throughout the United States, including in Washington. Chemours is

24   a corporation registered to do business in the State of Washington.

25        21.   Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized and

26   existing under the laws of the State of Delaware with its principal place of business located at One

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

1   Stanton Street, Marinette, Wisconsin. Tyco is the successor-in-interest to Williams (defined
2   below) and/or Williams is a subsidiary of Tyco. Tyco is responsible for all of William's liabilities,
3   including liabilities related to its Long-Chain PFAS AFFF. At all relevant times, Tyco designed,
4   manufactured, marketed, promoted, distributed, and/or sold Long-Chain PFAS AFFF to Marathon
5   for storing, using, and testing at the Refinery, causing injury to Marathon's property. Tyco
6   transacts business throughout the United States, including in Washington. Tyco is a corporation
7   registered to do business in the State of Washington.

8       22.     Williams Fire and Hazard Control, Inc., also known as WillFire HC, LLC
9   (collectively, "Williams"), is a limited liability company organized and existing under the laws of
10  the State of Delaware with its principal place of business located at 9605 Richard Wycoff Dr., Port
11  Arthur, Texas. Williams is a subsidiary of Tyco and/or Tyco is a successor-in-interest to Williams.
12  Williams is also known as WillFire HC, LLC. At all relevant times, Williams designed,
13  manufactured, marketed, promoted, distributed, and/or sold Long-Chain PFAS AFFF to Marathon
14  for storing, using, and testing at the Refinery, causing injury to Marathon's property. Williams
15  transacts business throughout the United States, including in Washington.

16      23.     Defendants ABC Corporations 1 through 20, which are unknown at this time, are
17  manufacturers, distributors, and/or sellers of Long Chain PFAS that were used in Long Chain
18  PFAS AFFF and have caused or are otherwise responsible for the Long Chain PFAS contamination
19  at the Refinery. Marathon will identify these corporations by name once their identity is
20  discovered.

21                        **III.   JURISDICTION AND VENUE**

22      24.     This Court has jurisdiction over the subject matter of this suit under RCW 2.08.010.

23      25.     This Court has personal jurisdiction over the non-resident Defendants under RCW
24  4.28.080, RCW 4.28.185, and RCW 19.86.160.

25      26.     Venue is proper in this Court under RCW 4.12.010, RCW 4.12.020, and RCW
26  4.12.025 because the Refinery is located in Skagit County, the causes of actions in this suit arose

AMENDED COMPLAINT - 7

1  in Skagit County, and Manufacturers transact business in Skagit County.

2       27.    Although the Refinery and causes of action arise in Skagit County, Plaintiffs and

3  most of the Manufacturers are citizens of the same state: Delaware.

4  **IV.  FACTS**

5  **A. The Research and Development of PFAS and AFFF**

6       28.    PFAS—commonly known as "forever chemicals"—are a family of man-made

7  fluorinated compounds, which contain bonded fluorine and carbon chains. As a result of their

8  chemical structure, PFAS are stable, mobile, persistent in the environment, and resistant to

9  biodegradation.

10       29.    PFAS, like Long-Chain PFAS, are fluorocarbons. A fluorocarbon is a chemical that

11  binds fluorine and carbon atoms. Fluorocarbon chains with eight carbons are commonly known as

12  "C8" or "long chain" PFAS. Fluorocarbon chains with six carbons are referred to as "C6"

13  chemicals. Only the Long-Chain PFAS are the subject of this suit.

14       30.    PFAS, like Long-Chain PFAS, are also fluorosurfacants. Fluorosurfactants are

15  chemicals that decrease the surface tension of a concentrate or water solution. These characteristics

16  make it easier for Long-Chain PFAS AFFF to generate foam from the solution.

17       31.    AFFF are firefighting foams used for fire suppression, training, and testing, and

18  flammable vapor suppression. These foams are used to extinguish fires from flammable and

19  combustible liquids, such as gasoline, oil, and jet fuel.

20       32.    The 3M Company ("3M") first developed and produced fluorosurfactants

21  containing Long-Chain PFAS through electrochemical fluorination in the 1940s.[5] By the 1960s,

22  3M used this process to develop the first PFAS-containing AFFF. Until the 1970s, 3M was the

23  sole manufacturer of Long-Chain PFAS AFFF. 3M manufactured, marketed, sold, and distributed

---

[5]  At this time, Marathon does not believe that 3M supplied any of the Manufacturers with Long-Chain PFAS and thus is not named as a defendant. If discovery in this case proves otherwise, Marathon will amend to identify 3M as one of the ABC Corporations identified above.

AMENDED COMPLAINT - 8

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

1    Long-Chain PFAS and Long-Chain PFAS AFFF until the 2000s.

2         33.    The PFAS Manufacturers have used a telomerization process to produce Long-

3    Chain PFAS fluorosurfactants. In the 1970s, Arkema and Ciba began to manufacture, market, sell,

4    and distribute Long-Chain PFAS fluorosurfactants to manufacturers of AFFF. Upon information

5    and belief, Arkema and Ciba supplied the AFFF Manufacturers with Long-Chain PFAS.

6         34.    In 2002, Old DuPont acquired Arkema's Long-Chain PFAS flourosurfactant

7    business. Thereafter, Old DuPont continued to manufacture, market, sell, and distribute Long-

8    Chain PFAS fluorosurfactants to the AFFF Manufacturers.

9         35.    Notably, after 3M exited the AFFF market in the 2000s, Old DuPont expanded its

10   share of that market. In 2015, after Old DuPont completed the spinoff of Chemours, Chemours

11   continued to manufacture, market, sell, and distribute Long-Chain PFAS fluorosurfactants to the

12   AFFF Manufacturers.

13        36.    An alternative design from Long-Chain PFAS AFFF—*e.g.*, AFFF made from C6

14   PFAS—has been available for at least 40 years and possibly much longer.

15   **B. The Manufacturers Knew About and Actively Concealed the Problems with Long-
     Chain PFAS and Long-Chain PFAS AFFF for Decades.**

16

17        i.    <u>Old DuPont's knowledge and concealment of the environmental problems arising
              from their Long-Chain PFAS and Long-Chain PFAS AFFF.</u>

18

19        37.    Old DuPont has known for decades that the Long-Chain PFAS, including PFOA

20   and its precursors, it manufactured and sold to the other Manufacturers negatively impacts the

21   environment due to environmental characteristics of its Long-Chain PFAS.

22        38.    By the 1960s, Old DuPont was aware its Long-Chain PFAS caused environmental

23   contamination. By 1984, Old DuPont was aware that PFOA persists in the environment. Although

24   Old Dupont was aware of the environmental problems with its Long-Chain PFAS for decades, it

25   continued to publicly claim that its Long-Chain PFAS was safe to the environment.

26        39.    By 2004, however, the Environmental Protection Agency ("EPA") filed an

AMENDED COMPLAINT - 9

administrative action against Old DuPont for violating the Toxic Substances Control Act ("TSCA") and the Resource Conservation and Recovery Act ("RCRA"). More specifically, EPA filed an action against Old DuPont for failing to disclose information regarding the problems with its PFOA dating back to the 1980s and for failing to comply with EPA's request for information regarding such problems. In 2005, Old DuPont settled with EPA for the largest civil administrative penalty the EPA had ever obtained at that time under any federal environmental statute. Collectively, Old DuPont agreed to pay over $16 million in civil penalties and to fund supplemental environmental projects.

40.    In 2006, eight (8) companies, including Arkema, BASF, and Old DuPont, joined EPA's 2010/2015 PFOA Stewardship Program. This program called for a 95% reduction in the use of PFOA by 2010 and the elimination of PFOA from products by 2015. All eight companies claim they have met the goals of the program. However, as late as 2015, customers were still finding PFOA in their Long-Chain PFAS AFFF.

41.    Although Old DuPont has known for decades of the problems associated with its Long-Chain PFAS, which it sold to the AFFF Manufacturers, and despite EPA's actions against Old DuPont, Old DuPont has continued to publicly claim that its Long-Chain PFAS do not pose a risk to the environment or the public.

42.    Old DuPont and its successors never disclosed the environmental problems associated with their PFOA or their precursors or the PFAS containing-AFFF that were based on Old DuPont's Long-Chain PFAS to Marathon. In fact, Old DuPont and its successors actively concealed their knowledge of these problems from Marathon. If Old DuPont and its successors had disclosed these environmental issues to Marathon, such disclosure would have materially impacted Marathon's purchase and use of the Long-Chain PFAS AFFF that used Old DuPont's PFOA and other Long-Chain PFAS.

      ii.    <u>The Manufacturers' knowledge and concealment of the environmental problems arising from their Long-Chain PFAS and Long-Chain PFAS AFFF.</u>

AMENDED COMPLAINT - 10

43.    The Manufacturers knew, or should have known, that Long-Chain PFAS and Long-Chain PFAS AFFF would harm the environment when commonly used or used as directed or intended. These Manufacturers knew, for example, that their Long-Chain PFAS AFFF contained PFOA and did not biodegrade in the environment.

44.    The AFFF Manufacturers provided explicit instructions for the use of their AFFF. Such instructions included, but were not limited to, using Long-Chain PFAS AFFF during emergencies, training, and testing; discharging said AFFF onto the ground and/or soil; and treating the waste through normal treatment systems and/or by applying water.

45.    These Manufacturers, as well as their successors, never disclosed the environmental problems associated with their Long-Chain PFAS AFFF. They knew, or should have known, that their Long-Chain PFAS AFFF would harm the environment when used as instructed or directed or when commonly used. In fact, these other Manufacturers, as well as their successors, actively concealed their knowledge of these problems from Marathon. If these other Manufacturers, as well as their successors, had disclosed these environmental issues to Marathon, such disclosure would have materially impacted Marathon's decision to purchase and use their Long-Chain PFAS AFFF.

      iii.    <u>The Manufacturers created and used the FFFC to control the messaging around Long-Chain PFAS and Long-Chain PFAS AFFF and shield such PFAS and AFFF from scrutiny.</u>

46.    In 2001, several Manufacturers created the Firefighting Foam Coalition ("FFFC"), a national AFFF trade organization, to advocate for the continued use of Long-Chain AFFF PFAS and present their propaganda regarding Long-Chain PFAS. These Manufacturers included, among others, Old DuPont, Chemours, National Foam, Tyco, Chemguard, and Dynax (the "FFFC Manufacturers"). The FFFC Manufacturers shared information regarding their knowledge of the harms associated with their Long-Chain PFAS and Long-Chain PFAS AFFF with each other, and they worked together to mislead the regulators and public, as well as their customers.

47.    The FFFC Manufacturers—through the FFFC—claimed they would serve as "a

AMENDED COMPLAINT - 11

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

1    single source for accurate, balanced information on environment-related questions" and would

2    "ensure that accurate information about PFOS alternatives, including telomer-based products, is

3    disseminated in the marketplace."

4         48.    Although the FFFC made several false and/or misleading statements, three are

5    particularly relevant: First, the FFFC claimed that their Long-Chain PFAS and Long-Chain PFAS

6    AFFF were safe because they did not contain or break down to PFOS, a PFAS associated with

7    3M's Long-Chain PFAS and Long-Chain PFAS AFFF. This claim, as the FFFC members knew

8    or should have known, was false when made, as detailed above.

9         49.    Second, the FFFC claimed that its Long-Chain PFAS and Long-Chain PFAS AFFF

10   did not contain or break down into PFOA. This claim, as the FFFC members knew or should have

11   known, was also false when made. For example, in an internal email titled "Foam Nasties," an

12   employee of an FFFC Manufacturer noted that it was a common understanding that Long-Chain

13   PFAS and Long-Chain PFAS AFFF degrade into PFOA. An executive for an FFFC Manufacturer

14   noted that his company's Long-Chain PFAS AFFF "will degrade in the environment" into PFOA.

15   Tyco was aware as early as 1998, and likely sooner, that its Long-Chain PFAS AFFF degraded

16   into PFOA.

17        50.    Third, the FFFC claimed that its Long-Chain PFAS and Long-Chain PFAS AFFF

18   only used C6 PFAS. This claim, as the FFFC members knew or should have known, was false

19   when made. For example, one employee for an FFFC Manufacturer noted that the FFFC had been

20   "economical with the truth" when it led "the EPA to believe that [their Long-Chain PFAS AFFF]

21   were only made with C6 surfactants."

22        51.    The FFFC also placed its president in the EPA Telomer Technical Workgroup

23   ("Workgroup") that was working to make recommendations to the EPA about the future use of

24   Long-Chain PFAS AFFF. In doing so, the FFFC president advanced the above-referenced claims

25   while concealing the truth from the Workgroup. The Workgroup then proposed, and EPA

26   accepted, the claim that Long-Chain PFAS AFFF did not contribute to PFOA contamination. The

AMENDED COMPLAINT - 12

1  FFFC president then boasted that he "stood at the EPA public meeting and stated that [Long-Chain

2  PFAS AFFF] was not likely a source of PFOA in the environment" and "everyone in the room

3  including EPA agreed." As a result of these efforts, EPA did not take action on the FFFC

4  Manufacturers' Long-Chain PFAS and Long-Chain PFAS AFFF for years.

5  52.     The FFFC also worked to advance the above-referenced false and/or misleading

6  claims, as well as many others, through conferences, presentations, and newsletters. The FFFC

7  advanced this narrative to the public, federal and state regulators, and its consumers, like

8  Marathon. They also sought to conceal the falsity and/or misleading nature of such claims.

9  **C. Washington and Federal Regulators Take Action to Regulate PFAS.**

10  53.     Washington has taken several actions to regulate or restrict the use of PFAS within

11  the state. Washington has issued SALs for five PFAS in drinking water, including PFOA and

12  PFOS. Washington has also designated PFAS as "hazardous substances" under MTCA and

13  provided soil and groundwater MTCA cleanup levels for eight PFAS, including PFOA and PFOS.

14  54.     The federal government, especially EPA, has also taken affirmative steps to

15  regulate PFAS. EPA has set MCL's for six PFAS, including PFOA and PFOS, in drinking water.

16  EPA has also designated PFOA and PFOS as hazardous substances under CERCLA and proposed

17  to designate them as hazardous constituents under RCRA.

18
19  **D. Marathon Discovers the Environmental Problems Associated with Manufacturers' Long-Chain PFAS and Long-Chain PFAS AFFF.**

20  55.     Marathon and its predecessors purchased and utilized the Manufacturers' Long-

21  Chain PFAS AFFF, containing Long-Chain PFAS, at the Refinery for decades. Such non-Milspec

22  and non-QPL foams include Universal Plus 3/6% AR-AFFF and Thunderstorm FC-601A 1/3%

23  AR-AFFF.

24  56.     Marathon utilized Long-Chain PFAS AFFF at the Refinery as instructed, directed,

25  and/or commonly envisioned by the Manufacturers, including for use in fire and spill suppression,

26  training, and testing of equipment, for decades. Williams has provided on-site training and written

AMENDED COMPLAINT - 13

1   instructions on the use of its Long-Chain PFAS AFFF at the Refinery. Williams has also

2   misrepresented to Marathon that its non-MilSpec, non QPL Thunderstorm FC-601A is

3   "biodegradable, low in toxicity[,] and can be treated in sewage treatment plants."

4       57.    Tyco's predecessor Ansul has also provided written and video instructions on the

5   use of Long-Chain PFAS AFFF to firefighters at the Refinery.

6       58.    The PFAS Manufacturers were aware that their Long-Chain PFAS would be used

7   in non-Milspec and non-QPL Long-Chain PFAS marketed, sold, and used at oil refineries, like the

8   Refinery, and advertised and marketed their Long-Chain PFAS to oil refineries, like the Refinery,

9   through individual material and through trade association publications, including but not limited

10  to such publications from the FFFC. These advertisements and marketing materials contained the

11  false and misleading statements detained in this Amended Complaint.

12      59.    The use of Long-Chain PFAS AFFF at the Refinery resulted in releases of Long-

13  Chain PFAS to the environment and Long-Chain PFAS contamination at the Refinery. As a result

14  of said contamination, Marathon has incurred and will continue to incur costs and expenses related

15  to abating, investigating, and remediating the Long-Chain PFAS contamination at the Refinery.

16  Such costs also include costs associated with replacing Long-Chain PFAS AFFF with non-Long-

17  Chain PFAS AFFF.

18  ### V.  CAUSES OF ACTION

19  #### A.  COUNT 1: MTCA (AGAINST AFFF MANUFACTURERS)

20      60.    Marathon repeats, realleges, and incorporates herein by reference each and every

21  allegation contained in the preceding paragraphs as though fully set forth herein.

22      61.    Marathon asserts this claim against the AFFF Manufacturers under MTCA, RCW

23  70A.305.080.

24      62.    Under RCW 70A.305.080, "a person may bring a private right of action, including

25  a claim for contribution or for declaratory relief, against any other person liable under RCW

26  70A.305.040 for the recovery of remedial action costs."

AMENDED COMPLAINT - 14

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

63.    A "remedial action" is "any action or expenditure consistent with the purposes of [MTCA] to identify, eliminate, or minimize any threat or potential threat posed by hazardous substances to human health or the environment including any investigative and monitoring activities with respect to any release or threatened release of a hazardous substance and any health assessments or health effects studies conducted in order to determine the risk or potential risk to human health." RCW 70A.305.020(33).

64.    RCW 70A.305.040(1)(c) renders liable "[a]ny person who owned or possessed a hazardous substance and who by contract, agreement, or otherwise arranged for disposal or treatment of the hazardous substance at the facility, or arranged with a transporter for transport for disposal or treatment of the hazardous substances at the facility, or otherwise generated hazardous wastes disposed of or treated at the facility."

65.    RCW 70A.305.040(1)(e) renders liable "[a]ny person who both sells a hazardous substance and is responsible for written instructions for its use if (i) the substance is used according to the instructions and (ii) the use constitutes a release for which remedial action is required at the facility."

66.    Liability under MTCA is strict, joint, and several. RCW 70A.305.040(2)

67.    Each AFFF Manufacturer is a "person" under RCW 70A.305.020(24).

68.    The Refinery is a "facility" under RCW 70A.305.020(8).

69.    Long-Chain PFAS are "hazardous substances" under RCW 70A.305.020(13). Long-Chain PFAS are included in Long-Chain PFAS by the AFFF Manufacturers.

70.    The AFFF Manufacturers arranged for the disposal of Long-Chain PFAS at the Refinery through a contract with Marathon for the sale and use of Long-Chain PFAS AFFF, which resulted in the release and/or disposal of Long-Chain PFAS at the Refinery.

71.    The AFFF Manufacturers were responsible for written instructions for the use of Long-Chain PFAS AFFF and provided such instructions to Marathon for use of said AFFF at the Refinery.

AMENDED COMPLAINT - 15

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

1    72.    Marathon used the AFFF Manufacturers' Long-Chain PFAS AFFF at the Refinery

2    in accordance with the instructions provided by the AFFF Manufacturers.

3    73.    As a proximate result of said disposal of Long-Chain PFAS and/or use of Long-

4    Chain PFAS AFFF pursuant to the AFFF Manufacturers' written instructions for the use of their

5    Long-Chain PFAS AFFF, Long-Chain PFAS were released at the Refinery and a "remedial action"

6    under RCW 70A.305.020(33) is required at the Refinery.

7    74.    The AFFF Manufacturers' actions and Long-Chain PFAS AFFF have proximately

8    caused Marathon injury, damage, and/or harm at the Refinery. Marathon has incurred and will

9    continue to incur remedial action costs at the Refinery due to AFFF Manufacturers' Long-Chain

10    PFAS AFFF.

11    75.    Based on the above-referenced violations of the MTCA, the AFFF Manufacturers

12    are strictly, joint, and severally liable to Marathon. Marathon is entitled to, among other remedies,

13    remedial action costs, including investigation costs, replacement costs, attorney fees, and

14    expenses, as well as a declaration ordering the AFFF Manufacturers to pay for future remedial

15    action costs.

16    76.    The AFFF Manufacturers' successors-in-interest, to the extent applicable, are also

17    responsible for the AFFF Manufacturers' liability under this cause of action.

18    **B. COUNT 2: CONSUMER PROTECTION ACT (ALL MANUFACTURERS)**

19    77.    Marathon repeats, realleges, and incorporates herein by reference each and every

20    allegation contained in the preceding paragraphs as though fully set forth herein.

21    78.    Marathon brings this claim under the WCPA against all Manufacturers.

22    79.    The WCPA prohibits "[u]nfair methods of competition and unfair or deceptive acts

23    or practices in the conduct of any trade or commerce." RCW 19.86.020.

24    80.    A private cause of action under the WCPA requires: "(1) [an] unfair or deceptive

25    act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff

26    in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco*

AMENDED COMPLAINT - 16

1 | *Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531, 533 (1986).

2 |      81.    The Manufacturers engaged in unfair and/or deceptive acts or practices, as used in
3 | RCW 19.86.020, by, among other acts and/or practices: (i) claiming that their Long-Chain PFAS
4 | and Long-Chain PFAS AFFF were safe for use and the environment while misrepresenting and/or
5 | omitting risks and complications associated with their PFAS and AFFF; (ii) omitting and/or failing
6 | to update their information and marketing materials with known, material risks associated with
7 | their Long-Chain PFAS and Long-Chain PFAS AFFF; and (iii) by failing to disclose and/or
8 | actively concealing environmental problems associated with their Long-Chain PFAS and Long-
9 | Chain PFAS AFFF. These unfair and deceptive practices, as well as others engaged in by the
10 | Manufacturers, are detailed throughout this Amended Complaint.

11 |      82.    The Manufacturers' manufacturing, marketing, promoting, distributing, and sale of
12 | Long-Chain PFAS and Long-Chain PFAS AFFF within the United States and to customers, like
13 | Marathon, in Washington constitute acts occurring in "trade" or "commerce" under RCW
14 | 19.86.010(2).

15 |      83.    The Manufacturers' acts or practices are "deceptive" under RCW 19.86.020
16 | because, among other reasons, they include misrepresentations of facts and failures to disclose
17 | material facts. *See Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162
18 | Wn.2d 59, 75 (2007). Such acts and practices are also "deceptive" because they mislead a
19 | substantial number of consumers and users. *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d
20 | 27, 50 (2009).

21 |      84.    The Manufacturers' acts or practices are "unfair" under RCW 19.86.020 because,
22 | among other reasons, they offend public policy; are immoral, unethical, oppressive, and/or
23 | unscrupulous; and cause substantial injury to consumers, like Marathon. *Blake v. Fed. Way Cycle*
24 | *Ctr.*, 40 Wn. App. 302, 310 (1985).

25 |      85.    The Manufacturers' unfair and/or deceptive acts or practices in trade or commerce
26 | have impacted the public interest because, among other things, they exhibit a pattern of continuing

AMENDED COMPLAINT - 17

1  misrepresentation by the Manufacturers, injury to other consumers within Washington, and
2  confusion to the public.

3      86.    The Manufacturers' unfair and/or deceptive acts or practices in trade or commerce
4  have proximately caused Marathon injury, damage, and/or harm at the Refinery, including but not
5  limited to clean-up costs.

6      87.    Based on the above-referenced violations of the WCPA, Marathon is entitled to,
7  among other remedies, actual damages, attorney fees, and treble damages in an amount to be
8  determined at trial. RCW 19.86.90.

9      88.    The Manufacturers' successors-in-interest, to the extent applicable, are also
10  responsible for the Manufacturers' liability under this cause of action.

11      **C. COUNT 3: FRAUD (ALL MANUFACTURERS)**

12      89.    Marathon repeats, realleges, and incorporates herein by reference each and every
13  allegation contained in the preceding paragraphs as though fully set forth herein.

14      90.    Marathon asserts this fraud claim against all Manufacturers under Washington
15  common law.

16      91.    Under common law, a fraud claim requires a "(1) representation of an existing fact;
17  (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that
18  it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance
19  on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by
20  the plaintiff." *Stiley v. Block*, 130 Wn.2d 486, 505 (1996).

21      92.    The Manufacturers' representations regarding their Long-Chain PFAS and Long-
22  Chain PFAS AFFF were material and false when made and the Manufacturers knew that their
23  statements were false based on their experience, use, and testing with such PFAS and AFFF, their
24  internal documentation, and their communications with other Manufacturers. These false
25  statements are detailed throughout this Amended Complaint. Examples of the Manufacturers' false
26  statements include but are not limited to the following:

AMENDED COMPLAINT - 18

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

1      • Old DuPont claimed that its Long-Chain PFAS did not pose a risk to the environment.

2      • Old DuPont concealed its knowledge of the environmental impacts associated with its

3          Long-Chain PFAS.

4      • Williams claimed that its non-MilSpec, non QPL Thunderstorm FC-601A is

5          "biodegradable, low in toxicity[,] and can be treated in sewage treatment plants."

6      • The Manufacturers claimed that their (i) Long-Chain PFAS are biodegradable, (ii)

7          Long-Chain PFAS and/or Long-Chain PFAS AFFF do not harm the environment, and

8          (iii) Long-Chain PFAS and Long-Chain PFAS AFFF do not contain or break down into

9          PFOA.

10     • The Manufacturers claimed their Long-Chain PFAS could be discharged onto the

11         ground and/or soil or treated through normal treatment systems without causing

12         environmental problems.

13     • The Manufacturers concealed that their Long-Chain PFAS AFFF contained PFOA and

14         did not biodegrade in the environment.

15     • The FFFC Manufacturers claimed that their Long-Chain PFAS and Long-Chain PFAS

16         AFFF (i) were safe, (ii) did not contain or break down into PFOA, and (iii) only used

17         C6 PFAS.

18     93.    The Manufacturers intended for their consumers, like Marathon, to rely on their

19 false representations regarding their Long-Chain PFAS and Long-Chain PFAS AFFF, and

20 Marathon did rely on said representation without knowing that they were false when made by the

21 Manufacturers.

22     94.    Marathon rightfully relied on the Manufacturers' false representations regarding

23 their Long-Chain PFAS and Long-Chain PFAS AFFF without knowing that such representations

24 were false and, as a result of such reliance, suffered damages to the Refinery.

25     95.    Marathon's injuries, damages, and harms at the Refinery are proximately caused

26 by the Manufacturers' fraudulent conduct detailed above. Marathon has incurred, is currently

AMENDED COMPLAINT - 19

1  incurring, and will continue to incur damages as a result of the Manufacturers' fraudulent conduct.

2  96.    Based on the above-referenced fraud, Marathon is entitled to, among other

3  remedies, full compensation for its damages arising from said fraudulent conduct in an amount to

4  be determined at trial.

5  97.    The Manufacturers' successors-in-interest, to the extent applicable, are also

6  responsible for the Manufacturers' liability under this cause of action.

7  **D. COUNT 4: NEGLIGENT MISREPRESENTATION (ALL MANUFACTURERS)**

8  98.    Marathon repeats, realleges, and incorporates herein by reference each and every

9  allegation contained in the preceding paragraphs as though fully set forth herein.

10  99.    Marathon asserts this negligent misrepresentation claim against all Manufacturers

11  under Washington common law.

12  100.    Under common law, there are two types of negligent misrepresentation: affirmative

13  misstatements and failures to disclose information. Marathon asserts both claims against the

14  Manufacturers.

15  101.    An affirmative misstatement claim arises when "(1) the defendant supplied

16  information for the guidance of others in their business transactions that was false, (2) the

17  defendant knew or should have known that the information was supplied to guide the plaintiff in

18  his business transactions, (3) the defendant was negligent in obtaining or communicating the false

19  information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was

20  reasonable, and (6) the false information proximately caused the plaintiff damages." *Specialty*

21  *Asphalt & Construction, LLC v. Lincoln County*, 191 Wn.2d 182, 196 (2018).

22  102.    A claim for failure to disclose information arises when "'[o]ne who fails to disclose

23  to another a fact that he knows may justifiably induce the other to act or refrain from acting in a

24  business transaction'" but liability is limited to circumstances where "'he is under a duty to the

25  other to exercise reasonable care to disclose the matter in question.'" *Richland School District v.*

26  *Mabton School District*, 111 Wn. App. 377, 385 (2002) (quoting Restatement (Second) of Torts §

AMENDED COMPLAINT - 20

551(1) (1977)). Such a duty exists, for example, when "'necessary to prevent his partial or ambiguous statement of the facts from being misleading[.]'" *Guarino v. Interactive Objects, Inc.*, 122 Wn. App. 95, 130 (2004) (quoting Restatement (Second) of Torts § 551(2)(b) (1977)).

103.    The Manufacturers supplied information about their Long-Chain PFAS and Long-Chain PFAS AFFF to consumers, including Marathon, to guide their business transactions and decisions that was false when supplied.

104.    The Manufacturers knew or should have known that such false information regarding their Long-Chain PFAS and Long-Chain PFAS AFFF was supplied to their customers, including Marathon, to cause, entice, influence, and/or guide their customers, including Marathon, into purchasing their products. These false or misleading statements are detailed throughout this Amended Complaint. Examples of the Manufacturers' false or misleading statements include but are not limited to the following:

- Old DuPont claimed that its Long-Chain PFAS did not pose a risk to the environment.

- Old DuPont concealed its knowledge of the environmental impacts associated with its Long-Chain PFAS.

- Williams claimed that its non-MilSpec, non QPL Thunderstorm FC-601A is "biodegradable, low in toxicity[,] and can be treated in sewage treatment plants."

- The Manufacturers claimed that their (i) Long-Chain PFAS are biodegradable, (ii) Long-Chain PFAS and/or Long-Chain PFAS AFFF do not harm the environment, and (iii) Long-Chain PFAS and Long-Chain PFAS AFFF do not contain or break down into PFOA.

- The Manufacturers claimed their Long-Chain PFAS could be discharged onto the ground and/or soil or treated through normal treatment systems without causing environmental problems.

- The Manufacturers concealed that their Long-Chain PFAS AFFF contained PFOA and did not biodegrade in the environment.

AMENDED COMPLAINT - 21

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

- The FFFC Manufacturers claimed that their Long-Chain PFAS and Long-Chain PFAS AFFF (i) were safe, (ii) did not contain or break down into PFOA, and (iii) only used C6 PFAS.

105.     The Manufacturers were negligent in obtaining and/or communicating their false or misleading information to Marathon.

106.     Marathon reasonably relied on the Manufacturers' false or misleading information, which proximately caused Marathon's injury, harm, and damages at the Refinery.

107.     The Manufacturers were also under a duty to disclose the information they knew about the harms associated with their Long-Chain PFAS and Long-Chain PFAS AFFF. Such duty arose from their misstatements, half-truths, and other deceitful partial or ambiguous statements of fact regarding the impacts and/or harms—or lack thereof—associated with their Long-Chain PFAS and Long-Chain PFAS AFFF.

108.     The Manufacturers' failures to disclose the harms they knew, or should have known, would result from their Long-Chain PFAS and Long-Chain PFAS AFFF, induced Marathon into purchasing and using said PFAS and AFFF, which proximately caused Marathon's injury, harm, and damages at the Refinery.

109.     Marathon's injuries, damages, and harms at the Refinery are proximately caused by the Manufacturers' negligent misrepresentations detailed above. Marathon has incurred, is currently incurring, and will continue to incur damages as a result of the Manufacturers' fraudulent conduct.

110.     Based on the above-referenced negligent misrepresentations, Marathon is entitled to, among other remedies, full compensation for its damages arising from said misrepresentations in an amount to be determined at trial.

111.     The Manufacturers' successors-in-interest, to the extent applicable, are also responsible for the Manufacturers' liability under this cause of action.

**E.  COUNT 5: PRODUCTS LIABILITY - DESIGN DEFECT (ALL MANUFACTURERS)**

AMENDED COMPLAINT - 22

1    112.    Marathon repeats, realleges, and incorporates herein by reference each and every

2  allegation contained in the preceding paragraphs as though fully set forth herein.

3    113.    Marathon asserts this design defect product liability claim against all Manufacturers

4  under the Washington Products Liability Act ("WPLA"), RCW 7.72, and Washington common

5  law.

6    114.    The WPLA provides that a "product manufacturer is subject to liability to a

7  claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in

8  that the product was not reasonably safe as designed." RCW 7.72.030(1).  A "manufacturer" is a

9  "product seller who designs, produces, makes, fabricates, constructs, or remanufactures the

10  relevant product or component part of a product before its sale to a user or consumer." RCW

11  7.72.010(2). "A product is not reasonably safe as designed, if, at the time of manufacture, the

12  likelihood that the product would cause the claimant's harm or similar harms, and the seriousness

13  of those harms, outweighed the burden on the manufacturer to design a product that would have

14  prevented those harms and the adverse effect that an alternative design that was practical and

15  feasible would have on the usefulness of the product." RCW 7.72.030(1)(a). Liability under the

16  WPLA is strict liability. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 409 (2012).

17    115.    Under Washington common law, a design defect claim arises when (1) the product

18  has a defect, (2) said defect existed at the time the product left the defendant's control, (3) said

19  defect was not known to the plaintiff, (4) said defect rendered the product unreasonably dangerous,

20  and (5) said defect proximately caused the plaintiff's injury. *Lamon v. McDonnell Douglas Corp.*,

21  19 Wn. App. 515, 521 (1978).

22    116.    The Manufacturers knew, or should have known, that their Long-Chain PFAS and

23  Long-Chain PFAS AFFF were not reasonably safe for use or the environment as designed and at

24  the time of manufacture based on their experience, use, and testing with such PFAS and AFFF,

25  internal documentation, and communications with other Manufacturers.

26    117.    Based on their experience, use, and testing with such PFAS and AFFF, their internal

AMENDED COMPLAINT - 23

1   documentation, and their communications with other Manufacturers, the Manufacturers knew, or

2   should have known, that their Long-Chain PFAS and Long-Chain PFAS AFFF would cause harm

3   to the environment and property of its customers when used as directed or intended or during

4   common usage.

5       118.    Based on their experience, use, and testing with such PFAS and AFFF, their internal

6   documentation, and their communications with other Manufacturers, the Manufacturers knew, or

7   should have known, that their Long-Chain PFAS and Long-Chain PFAS AFFF did not outweigh

8   the seriousness of the harms to the environment and its customers' property associated with their

9   use, especially when used merely for training and demonstrative purposes.

10      119.    Based on their experience, use, and testing with such PFAS and AFFF, their internal

11  documentation, and their communications with other Manufacturers, the Manufacturers knew, or

12  should have known, that a practical and economically feasible alternative design for AFFF based

13  on C6 PFAS was available to replace their Long-Chain PFAS and Long-Chain PFAS AFFF and

14  that such alternative would have prevented the harm associated with their PFAS and AFFF.

15      120.    At the time of manufacture, the likelihood the Manufacturers' Long-Chain PFAS

16  and Long-Chain PFAS AFFF would cause harm, and the seriousness of those harms, outweighed

17  Manufacturers' burden to design a product that would have prevented those harms.

18      121.    The Manufacturers are liable because the Long-Chain PFAS and Long-Chain PFAS

19  AFFF are unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

20  Such Long-Chain PFAS and Long-Chain PFAS AFFF are similarly unreasonably dangerous.

21      122.    The Manufacturers' acts, omissions, misstatements, and other wrongful conduct

22  prevented its customers, like Marathon, from learning and discovering the problems posed by their

23  Long-Chain PFAS and Long-Chain PFAS AFFF and the harms to the environment and real

24  property that such PFAS and AFFF cause.

25      123.    The Manufacturers' defective Long-Chain PFAS and Long-Chain PFAS AFFF

26  have proximately caused injury, damage, and harm to Marathon. Marathon has incurred, is

AMENDED COMPLAINT - 24

1   currently incurring, and will continue to incur damages as a result.

2        124.    Based on the above-referenced product defects, Marathon is entitled to, among

3   other remedies, full compensation for its damages arising from said defects in an amount to be

4   determined at trial.

5        125.    The Manufacturers' successors-in-interest, to the extent applicable, are also

6   responsible for the Manufacturers' liability under this cause of action.

7   **F. COUNT 5: PRODUCTS LIABILITY – FAILURE TO WARN (ALL MANUFACTURERS)**

8        126.    Marathon repeats, realleges, and incorporates herein by reference each and every

9   allegation contained in the preceding paragraphs as though fully set forth herein.

10       127.    Marathon asserts this failure to warn product liability claim against all

11  Manufacturer Defendants under the WPLA, RCW 7.72, and Washington common law.

12       128.    The WPLA provides that a "product manufacturer is subject to liability to a

13  claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in

14  that the product was not reasonably safe . . . because adequate warnings or instructions were not

15  provided." RCW 7.72.030(1).  A "manufacturer" is a "product seller who designs, produces,

16  makes, fabricates, constructs, or remanufactures the relevant product or component part of a

17  product before its sale to a user or consumer." RCW 7.72.010(2).

18       129.    A product manufacturer fails to adequately warn consumers in one of two ways:

19  (1) "if, at the time of manufacture, the likelihood that the product would cause the claimant's harm

20  or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the

21  manufacturer inadequate and the manufacturer could have provided the warnings or instructions

22  which the claimant alleges would have been adequate"; and/or (2) if, after the product was

23  manufactured, the "manufacturer learned or where a reasonably prudent manufacturer should have

24  learned about a danger connected with the product." RCW 7.72.030(1)(b)-(c). As to the latter, "the

25  manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the

26  danger in the manner that a reasonably prudent manufacturer would act in the same or similar

AMENDED COMPLAINT - 25

1  circumstances." RCW 7.72.030(c). Liability under the WPLA is strict liability. *Macias*, 175 Wn.2d

2  at 409.

3      130.    Under common law, a failure to warn product liability claims arises when: (1) the

4  defendant failed to warn of the dangers inherent in its product; (2) said failure rendered the product

5  unreasonably dangerous; and (3) said failure proximately caused plaintiff's harm. *Little v. PPG*

6  *Indus., Inc.*, 92 Wn.2d 118, 125 (1979).

7      131.    Based on their experience, use, and testing with such PFAS and AFFF, their internal

8  documentation, and their communications with other Manufacturers, at the time of manufacture,

9  the Manufacturers knew, or should have known, that their Long-Chain PFAS and Long-Chain

10  PFAS AFFF were not reasonably safe for use or the environment as designed.

11      132.    Based on their experience, use, and testing with such PFAS and AFFF, their internal

12  documentation, and their communications with other Manufacturers, the Manufacturers knew, or

13  should have known, that their Long-Chain PFAS and Long-Chain PFAS AFFF would cause harm

14  to the environment and real property of its customers when used as directed or intended or during

15  common usage.

16      133.    Given the likelihood and seriousness of the harm, the Manufacturers were obligated

17  to provide adequate warnings or instructions with their Long-Chain PFAS and Long-Chain PFAS

18  AFFF at the time of manufacture. The Manufacturers, however, failed to provide such warning or

19  instructions at the time of manufacture even though they could have provided adequate warnings

20  and instructions to customers.

21      134.    The Manufacturers also failed to provide adequate warnings and instructions to

22  customers after manufacture despite a "duty to act" to provide such warnings and instructions as a

23  reasonably prudent manufacturer would have done. A reasonably prudent manufacturer, who knew

24  or should have known of the dangers associated with Long-Chain PFAS and Long-Chain PFAS

25  AFFF, as the Manufacturers knew or should have known here, would have properly warned and

26  instructed the public about the harms associated with such PFAS and AFFF. The Manufacturers

AMENDED COMPLAINT - 26

1   breached their duty to their customers, including Marathon, by failing to warn and inform their

2   users of the dangers of Long-Chain PFAS and Long-Chain PFAS AFFF.

3       135.    The Manufacturers' failure to warn its customers, like Marathon, of the dangers

4   associated with their Long-Chain PFAS and Long-Chain PFAS AFFF rendered said PFAS and

5   AFFF unreasonably dangerous.

6       136.    The Manufacturers' defective Long-Chain PFAS and Long-Chain PFAS AFFF

7   have proximately caused injury and harm to Marathon. Marathon has incurred, is currently

8   incurring and will continue to incur damages as a result.

9       137.    Based on the above-referenced product defects, Marathon is entitled to, among

10  other remedies, full compensation for its damages arising from said defects in an amount to be

11  determined at trial.

12      138.    The Manufacturers' successors-in-interest, to the extent applicable, are also

13  responsible for the Manufacturers' liability under this cause of action.

14  **G. COUNT 6: PRIVATE NUISANCE (ALL MANUFACTURERS)**

15      139.    Marathon repeats, realleges, and incorporates herein by reference each and every

16  allegation contained in the preceding paragraphs as though fully set forth herein.

17      140.    Marathon asserts this private nuisance claim against all Manufacturers under RCW

18  7.48 and Washington common law.

19      141.    RCW 7.48.120 provides that a "[n]uisance consists in unlawfully doing an act, or

20  omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort,

21  repose, health or safety of others . . . or in any way renders other persons insecure in life, or in the

22  use of property." A nuisance is actionable when, among other things, it causes "an obstruction to

23  the free use of property, so as to essentially interfere with the comfortable enjoyment of the life

24  and property." RCW 7.48.010.

25      142.    The Manufacturers' acts and omissions—as described herein, such as

26  manufacturing, selling, and discharging and/or releasing Long-Chain PFAS and/or Long-Chain

AMENDED COMPLAINT - 27

1    PFAS AFFF—unreasonably interfere, injure, and otherwise inhibit Marathon's use and enjoyment

2    of the Refinery. More specifically, the Manufacturers' acts and omissions, as described herein,

3    have caused damage to Marathon's real property and environmental contamination at the Refinery.

4        143.    The Manufacturers' acts and omissions have proximately caused injury and harm

5    to Marathon. Marathon has incurred, is currently incurring and will continue to incur damages as

6    a result.

7        144.    Based on the above-referenced nuisance, Marathon is entitled to, among other

8    remedies, damages arising from said nuisance in an amount to be proven at trial and injunctive

9    relief. RCW 7.48.020; *Grundy v. Thurston County*, 155 Wn.2d 1, 7 (2005).

10        145.    The Manufacturers' successors-in-interest, to the extent applicable, are also

11    responsible for the Manufacturers' liability under this cause of action.

12    **H.  COUNT 7: TRESPASS (ALL MANUFACTURERS)**

13        146.    Marathon repeats, realleges, and incorporates herein by reference each and every

14    allegation contained in the preceding paragraphs as though fully set forth herein.

15        147.    Marathon asserts this trespass claim against all Manufacturers under RCW 4.24.630

16    and Washington common law.

17        148.    RCW 4.24.630 provides that "[e]very person who goes onto the land of another and

18    who removes timber, crops, minerals, or other similar valuable property from the land, or

19    wrongfully causes waste or injury to the land, or wrongfully injures personal property or

20    improvements to real estate on the land, is liable to the injured party for treble the amount of the

21    damages caused by the removal, waste, or injury."

22        149.    Under common law, an intentional trespass occurs when the "defendant's actions

23    have '(1) invaded the plaintiff's interest in the exclusive possession of his property, (2) been

24    committed intentionally, (3) been done with the knowledge and reasonable foreseeability that the

25    act would disturb the plaintiffs' possession, and (4) caused actual and substantial damages.'"

26    *Lavington v. Hillier*, 22 Wn.App.2d 134, 149 (2022) (quoting *Bradley v. Am. Smelting & Ref. Co.*,

AMENDED COMPLAINT - 28

1    104 Wn.2d 677, 692-93 (1985)).

2        150.    The Manufacturers' intentional and wrongful acts in manufacturing, marketing,

3    selling, and/or distributing Long-Chain PFAS and Long-Chain PFAS AFFF injured, damaged, and

4    harmed Marathon at the Refinery. Such acts trespassed on Marathon's property and caused Long-

5    Chain PFAS to be released at the Refinery.

6        151.    The Manufacturers knew, or should have known, that they did not have Marathon's

7    authorization to take such acts that have caused and continue to cause the Refinery to be

8    contaminated with Long-Chain PFAS.

9        152.    The Manufacturers' actions in contaminating and otherwise invading Marathon's

10    exclusive possessory interest at the Refinery were intentional and done with the knowledge that

11    the release and/or disposal of Long-Chain PFAS would harm, injure, and damage the Refinery and

12    would disturb Marathon's use and possession of the Refinery.

13        153.    The Manufacturers' acts proximately caused Marathon's injuries, harms, and

14    damages at the Refinery. Such injuries, harms, and damages are actual and substantial. Marathon

15    has incurred, is currently incurring, and will continue to incur damages as a result of the

16    Manufacturers' acts.

17        154.    Based on the above-referenced trespass, Marathon is entitled to, among other

18    remedies, attorney fees, investigation costs, other litigation costs, and treble damages in an amount

19    to be determined at trial. RCW 4.24.630.

20        155.    The Manufacturers' successors-in-interest, to the extent applicable, are also

21    responsible for the Manufacturers' liability under this cause of action.

22    **I.    COUNT 8: NEGLIGENCE (ALL DEFENDANTS)**

23        156.    Marathon repeats, realleges, and incorporates herein by reference each and every

24    allegation contained in the preceding paragraphs as though fully set forth herein.

25        157.    Marathon asserts this common-law negligence claim against all Manufacturers.

26        158.    Under common law, a negligence claim arises when: (1) the defendant owed a duty

1  to the plaintiff; (2) the defendant breached that duty; and (3) the breach of that duty proximately

2  caused plaintiff's injury. *Turner v. Washington State Dep't of Soc. & Health Servs.*, 198 Wn.2d

3  273, 285 (2021).

4        159.  The Manufacturers owed a duty of care to their customers, such as Marathon,

5  including but not limited to the duty to exercise reasonable care in the research, design,

6  formulation, handling, manufacture, marketing, sale, testing, labeling, use, distribution,

7  promotion, and/or instructions for use of their Long-Chain PFAS and/or Long Chain PFAS AFFF.

8        160.  The Manufacturers knew, or should have known, that their Long-Chain PFAS

9  and/or Long-Chain PFAS AFFF would be used as directed or instructed or in its common use at

10  the Refinery thereby causing the release of Long-Chain PFAS at the Refinery.

11        161.  The Manufacturers failed to disclose the dangers they knew, or should have known,

12  were associated with using Long-Chain PFAS and/or Long-Chain PFAS AFFF, including by

13  failing to provide adequate warning and disposal instructions. Instead, the Manufacturers worked

14  to conceal—through false statements, misrepresentations, and failures to disclose information—

15  the true dangers associated with their Long-Chain PFAS and/or Long-Chain PFAS AFFF.

16        162.  The Manufacturers' breached said duties by causing Long-Chain PFAS to be

17  released at the Refinery. Such a release proximately caused Long-Chain PFAS contamination at

18  the Refinery.

19        163.  The Manufacturers' breaches—through acts and omissions—of their duties to

20  Marathon proximately caused Marathon's damages, injuries, and harms at the Refinery. Marathon

21  has incurred, is currently incurring, and will continue to incur damages as a result of the

22  Manufacturers' acts.

23        164.  Based on the above-referenced negligence, Marathon is entitled to, among other

24  remedies, full compensation for its damages arising from said negligence in an amount to be

25  determined at trial.

26        165.  The Manufacturers' successors-in-interest, to the extent applicable, are also

AMENDED COMPLAINT - 30

1 responsible for the Manufacturers' liability under this cause of action.

2 **J.  COUNT 9: DECLARATORY RELIEF (ALL MANUFACTURERS)**

3 166.    Marathon repeats, realleges, and incorporates herein by reference each and every

4 allegation contained in the preceding paragraphs as though fully set forth herein.

5 167.    Marathon asserts this declaratory relief claim against all Manufacturers.

6 168.    The Manufacturers knew, or should have known, that Long-Chain PFAS and Long-

7 Chain PFAS AFFF, when used in a foreseeable and intended manner, were dangerous and created

8 an unreasonable and excessive risk of harm to the environment.

9 169.    Manufacturers intentionally, willfully, deliberately, and/or negligently failed to

10 properly warn, train, handle, control, dispose, and release noxious and hazardous contaminants

11 and pollutants, such that the Manufacturers created substantial and unreasonable threats to the

12 environment, which resulted from the foreseeable and intended use and storage of Long-Chain

13 PFAS and Long-Chain PFAS AFFF.

14 170.    Among other things, Marathon must take costly remedial action to remove Long-

15 Chain PFAS contamination at the Refinery which has and will result in substantial costs, expenses,

16 and damages in an amount to be proved at trial.

17 171.    An actual controversy exists concerning who is financially responsible for abating

18 actual or threatened pollution or contamination at the Refinery by Long-Chain PFAS.

19 172.    In order to resolve this controversy, Marathon seeks an adjudication of the

20 respective rights and obligations of the parties, and other relief to the extent necessary to provide

21 full relief.

22 173.    The Manufacturers' successors-in-interest, to the extent applicable, are also

23 responsible for the Manufacturers' liability under this cause of action.

24 **VI.  PRAYER FOR RELIEF**

25 Plaintiffs pray for the following relief from this Court:

26 1.    Find the Manufacturers liable for all past and future costs to investigate, mitigate,

AMENDED COMPLAINT - 31

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

remediate, restore, treat, monitor, and otherwise respond to the Long-Chain PFAS contamination caused by the Manufacturers at the Refinery and restore the property to its pre-contamination condition.

2.      Find the Manufacturers liable for the lost use of the Refinery during all times of injury due to the Long-Chain PFAS contamination caused by Manufacturers.

3.      Order the Manufacturers to abate the private nuisance created by the Long-Chain PFAS contamination, including by remediating and/or restoring the Refinery to its pre-contamination condition.

4.      Order the Manufacturers to reimburse Marathon for its past costs to investigate, respond, treat, and remediate the Long-Chain AFFF contamination caused by Manufacturers.

5.      Order and declare that Manufacturers must fund future investigation, mitigation, restoration, monitoring, testing, treatment, and remediation of all Long-Chain PFAS contamination caused by Manufacturers.

6.      Declare that AFFF Manufacturers are strictly, jointly, and severally liable as PLPs for the Long-Chain PFAS contamination at the Refinery.

7.      Declare that Manufacturers are responsible and liable for any third-party claim against Marathon based on the Long-Chain PFAS contamination at the Refinery caused by the Manufacturers.

8.      Declare the Manufacturers' acts and omissions as unfair acts or practices in trade or commerce in violation of the WCPA.

9.      Award Marathon compensatory damages related to the property damage arising from the Long-Chain PFAS contamination caused by the Manufacturers, in an amount to be determined at trial.

10.      Award Marathon attorney fees and treble damages for the trespass at the Refinery and violations of the WCPA.

AMENDED COMPLAINT - 32

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

1      11.    Award Marathon its interest in the money paid to Manufacturers based on

2   Manufacturers' acts that were prohibited by the WCPA.

3      12.    Award Marathon its remedial action costs, including investigation costs, attorney

4   fees, and expenses under MTCA, in an amount to be proved at trial.

5      13.    Award Marathon pre-judgment and post-judgment interest according to applicable

6   law.

7      14.    Award Marathon all other relief to which it is entitled.

8      DATED: June 12, 2025.

9

10

MILLER NASH LLP

*/s/Fabio Dworschak*
Fabio Dworschak, WSBA No. 59067
Lane Conrad, WSBA No. 59287
605 5th Ave S, Suite 900
Seattle, WA  98104
Tel: (206) 624-8300
fabio.dworschak@millernash.com
lane.conrad@millernash.com

Trajan Perez, WSBA No. 53723
340 Golden Shore, Suite 450
Long Beach, CA 90802
Tel: (562) 247-7629
Trajan.perez@millernash.com

Ryan Hall, WSBA No. 56793
1140 SW Washington St, Suite 700
Portland, OR 97205
Tel: (503) 205-2394
Ryan.hall@millernash.com

*Attorneys for Plaintiffs*

AMENDED COMPLAINT - 33