UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARATHON PETROLEUM COMPANY LP; and TESORO MARKETING COMPANY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ARKEMA, INC.; BASF CORPORATION; EIDP, INC.; THE CHEMOURS COMPANY; TYCO FIRE PRODUCTS; WILLIAMS FIRE AND HAZARD CONTROL, INC.; and ABC CORPORATIONS 1-20,<br><br>Defendants. | CASE NO. C25-1250 MJP<br><br>ORDER GRANTING MOTION TO REMAND AND DENYING DEFENDANT'S MOTIONS AS MOOT |

This matter comes before the Court on Plaintiffs' Motion to Remand (Dkt. No. 20), and Defendant Tyco Fire Product's Motion to Extend Time (Dkt. No. 12) and Motion to Stay (Dkt. No. 22). Having reviewed the Motions, the Responses (Dkt. Nos. 15, 24, 29), the Replies (Dkt. Nos. 23, 26, 31), Tyco's Surreply (Dkt. No. 33), Tyco's Notices of Supplemental Authority (Dkt.

1  Nos. 34, 35), and all supporting materials, the Court GRANTS Plaintiffs' Motion and DENIES
2  Tyco's Motions as moot.

## BACKGROUND

**A.    The Lawsuit and Claims**

Plaintiffs Marathon Petroleum Company LP and Tesoro Refining & Marketing Company LLC (together "Marathon") own and operate a refinery in Anacortes, Washington (the "Refinery"). (Amended Complaint ¶ 1 (Dkt. No. 1-2).) Marathon alleges that its use of a kind of fire-fighting foam, called aqueous film forming foam ("AFFF"), has contaminated the Refinery due to its inclusion of per- and polyfluoroalkyl substance ("PFAS"). (See id. ¶¶ 1, 3-4, 9, 11.) Starting in the 1980s, Marathon began purchasing and using AFFF containing long-chain PFAS at the Refinery. (Id. ¶¶ 3-5, 9.) Marathon claims it was misled as to the safety of the AFFF and the PFAS it contained. (Id. ¶¶ 7, 43-45.) Through the present lawsuit, filed initially in Skagit County Superior Court, Marathon seeks to hold two groups of defendants accountable for the damage caused by and the remediation of the PFAS on the property: (1) the manufacturers of the PFAS, and (2) the manufacturers of the AFFF that contains the PFAS. Marathon pursues various state statutory and common law claims against Defendants, seeking actual and compensatory damages, remediation costs, treble damages, attorneys' fees and costs, and declaratory relief. (See AC ¶¶ 13-14.)

**B.    Removal From State Court**

Defendant Tyco Fire Products removed this action from Skagit County Superior Court on the theory that this Court has subject matter jurisdiction under the federal officer removal statute, which permits removal of a civil action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of

1  such office." 28 U.S.C. § 1442(a)(1). Tyco contends that some of the contamination at the
2  Refinery was likely caused by AFFF developed for the military that Tyco manufactured and
3  which it claims makes removal under the federal officer statute proper.
4      To satisfy federal officer removal, "a removing private entity must show that (a) it is a
5  'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken
6  pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable
7  federal defense." DeFiore v. SOC LLC, 85 F.4th 546, 553 (9th Cir. 2023) (citation and quotation
8  omitted). "To establish such a nexus, the contractors 'must show: (1) that [they were] "acting
9  under" a federal officer in performing some "act under color of federal office," and (2) that such
10  action is causally connected with the [guards'] claims against [them].'" Id. at 554 (quoting
11  County of San Mateo v. Chevron Corp., 32 F.4th 733, 755 (9th Cir. 2022)).
12      In its Notice of Removal, Tyco contends that all of the elements of the federal officer
13  removal statute are satisfied. (Dkt. No. 1.) As the briefing on Marathon's Motion to Remand
14  confirms, the Parties agree Tyco is a "person" under the statute. But the Parties dispute the
15  remaining elements: (1) whether Tyco was acting under a federal officer in creating the military-
16  specified AFFF, (2) whether this officer-directed conduct is causally connected with Marathon's
17  claims about contamination at the Refinery, and (3) whether Tyco has a colorable federal
18  defense. The Court reviews the facts and allegations relevant to these elements of the removal
19  statute.
20      First, as to the whether Tyco acted under a federal officer, Tyco alleges that it
21  manufactured military-specified AFFF ("MilSpec AFFF") "pursuant to detailed government
22  specifications and specific government direction and control." (Notice of Removal at 11.) Tyco
23
24

1    claims that AFFF products were subject to testing and review by the United States Navy in order
2    to be approved for military use. (Id.)

3    Second, as to the causal connection, Tyco asserts that MilSpec AFFF it manufactured
4    was used at both the Naval Air Station Whidbey Island ("NAS Whidbey") and the Bellingham
5    International Airport (the "Airport"), and that PFAS from this AFFF used at both locations has
6    migrated to and contaminated the Refinery. (Notice of Removal at 2, 9-10.) Tyco claims that
7    PFAS from the MilSpec AFFF used and stored at NAS Whidbey has been released through
8    wastewater into the Strait of Juan de Fuca and that PFAS has been "detected at elevated levels in
9    the soil and groundwater at the facility, including in groundwater adjacent to the Strait of Juan de
10   Fuca." (Id. at 9.) Tyco states that "[d]uring rising or high tides, surface water and accompanying
11   contaminants have flowed from NAS Whidbey Island through the Strait of Juan de Fuca and the
12   Guemes Channel to the Refinery." (Id.) As to the Airport, Tyco asserts that PFAS from MilSpec
13   AFFF used at the Airport has been discharged into Bellingham Bay, and that "[d]uring falling or
14   low tides, surface water and accompanying contaminants have flowed from the Airport through
15   Bellingham Bay to the Refinery." (Id.) Tyco explains that the Refinery is in a "seawater intrusion
16   area . . ., meaning that seawater infiltrates the groundwater on the refinery property" and that
17   "[d]ata show elevated salinity levels in the groundwater beneath the Refinery, indicating that
18   seawater and any accompanying contaminants have intruded on the property." (Id. at 9-10.) Tyco
19   claims that PFAS from MilSpec AFFF has traveled to the Refinery from NAS Whidbey and the
20   Airport, commingling with the commercial AFFF used at the Refinery. (Id.)

21   Third, as to the colorable federal defense, Tyco alleges that it cannot be liable because of
22   the federal contractor defense. Under this defense, "[l]iability for design defects in military
23   equipment cannot be imposed, pursuant to state law, when (1) the United States approved
24

reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle v. United Techs. Corp., 487 U.S. 500, 512 (1988); (see Notice of Removal at 14). Tyco alleges facts in support of each of these elements, which the Court does not separately review. (Notice of Removal at 14-17.)

**C.    Remand Request**

Marathon has challenged the legal and factual basis of Tyco's removal under the federal officer statute.

First, Marathon argues that because it alleges that no MilSpec-AFFF could have caused the contamination, Tyco's removal is improper. In its Amended Complaint, Marathon alleges "[g]iven the location of the Refinery, no Milspec or QPL AFFF can be the cause of the Long-Chain PFAS contamination at or damage to the Refinery." (AC ¶ 5.) Additionally, "Marathon does not seek to recover and expressly disclaims recovery for damages or contamination caused by QPL or Milspec AFFF or any AFFF created under the direction of the federal government at the Refinery." (Id. ¶ 4 n.3.) It asserts that "Marathon is not aware of any such contamination at the Refinery." (Id.)

Second, Marathon challenges Tyco's theory that PFAS from MilSpec AFFF used at NAS Whidbey and the Airport have traveled miles to the Refinery and reached the Refinery's property through seawater intrusion. (Mot. at 6-11.) Marathon makes several points. First, it points out that NAS Whidbey is 12 miles away from the Refinery in a straight line, without considering the longer water pathway between the two points. (Id. at 8.) And the Airport is 20 miles to the north of the Refinery across the Bellingham Bay. (Id.) Marathon points out that Tyco has not offered any evidence to support the theory that ocean currents carried the MilSpec AFFF PFAS to the

1  Refinery from either source. (Id.) Second, Marathon notes that drinking water wells along the
2  supposed pathway from the two sources to the Refinery do not show PFAS contamination, which
3  suggests that Tyco's theory is speculative. (Id. at 8-10.) Third, Marathon offers the declaration of
4  Joseph Sarr, who provides an opinion contradicting Tyco's theory that seawater intrusion
5  occurred at the Refinery. (Declaration of Joseph Sarr (Dkt. No. 21).) Sarr provides two opinions.
6  First, he notes that the groundwater below the Refinery is above sea level, and generally flows
7  from the land out to sea, thereby contradicting Tyco's theory that seawater is intruding on the
8  land. (Id. ¶ 2.) Second, Sarr explains that by applying the "Ghyben-Herzberg Principle, he
9  estimates that the depth of the saltwater below the Refinery is several hundred feet, even near the
10 shore. (Id.) He explains that "[b]ecause the Refinery does not operate any groundwater wells that
11 extract water, there is no potential for intrusion of saltwater due to well pumping." (Id.) In other
12 words, even if the MilSpec PFAS traveled the Refinery, there is no pathway for the chemicals to
13 get onto the Refinery.

   With its opposition to the Motion to Remand, Tyco offers the declaration of Kenneth L.
15 Walker, Jr., a geologist who attempts to provide factual support for Tyco's transport and
16 contamination theory. (Declaration of Kenneth L. Walker, Jr. (Dkt. No. 30).) The Court reviews
17 the salient points from Walker's declaration.

   First, Walker explains that, although predicting sea currents in the area is "a complex
19 issue," a model maintained by the University of British Columbia shows "a potential pathway
20 from the Airport [and NAS Whidbey] to the Marathon refinery." (Walker Decl. ¶ 9.)

   Second, Walker opines that "[m]ultiple lines of evidence support the plausible inference
22 that PFAS from Whidbey Island and the Airport may have not only reached the vicinity of the
23 March Point Peninsula but may have also entered Marathon's property." (Walker Decl. ¶ 10.)

Notably, he explains that there may have been saltwater intrusion into the freshwater aquifers and that "[u]ntil further detailed investigations that investigate the potential for seawater intrusion within these zones are completed, it is reasonable to infer that seawater, including any contaminants in that seawater, can affect these areas." (Id. ¶ 11.) Walker also suggests that there were permits to extract groundwater on the peninsula where the Refinery is located, but that no data shows whether any groundwater was actually pumped. (Id. ¶ 12.) He further describes several other possible mechanisms of contamination, but he offers no opinion on a more-likely-than-not basis that any of these have resulted in contamination. (Id. ¶¶ 13-21.) At best, he suggests that storm surges and tides that physically push overtop of land "likely" affected some of the Refinery, and that sea spray aerosols which could carry PFAS "likely . . . have deposited PFAS from surrounding seawater on Marathon's property, at least in areas near the shore." (Id. ¶ 16.) But Walker does not say that this is more likely the case than not.

Third, Walker opines that it is "plausible" and "reasonable to infer" that some of the PFAS entering the Refinery could be MilSpec AFFF because of the nature of the contamination and the exclusion of 3M products. (Walker Decl. ¶¶ 22-24.)

Fourth, Walker takes issue with Sarr's declaration, noting that Sarr has not excluded the possibility that groundwater may be below sea level in some places. (Walker Decl. ¶ 27.) Walker notes that Sarr only states that groundwater monitoring wells "generally indicate that the groundwater depth below the Refinery is above mean sea level." (Sarr Decl. ¶ 2; see Walker Decl. ¶ 27). Walker further notes that more analysis and data collection is necessary to "reliably rule out any impact of PFAS from MilSpec AFFF at the Refinery." (Walker Decl. ¶ 28.) And he takes issue with the fact that Sarr provided no data to back up his statements. (Id. ¶¶ 29-32.)

1 | Further, he notes that Sarr did not account for any groundwater pumping that may have occurred
2 | on adjacent land. (Id. ¶ 33.)

3 |      Fifth, Walker takes issue with the relevance of the Washington State well-related data
4 | that Marathon cites in its briefing. (Walker Decl. ¶¶ 34-36.) He notes that some of the wells still
5 | detect PFAS, though they are below actionable levels, and that this supports the possibility that
6 | PFAS from NAS Whidbey and the Airport traveled to the Refinery. Walker also notes that
7 | drinking water wells do not have any necessary relevance because they are often drilled to depths
8 | far lower than monitoring wells and tap into aquifers with large amounts of water. (Id. ¶ 36.)

9 | **ANALYSIS**

10 | **A.**    **Legal Standards**

11 |      Removal is proper if the court has original jurisdiction over the action. 28 U.S.C. §
12 | 1441(a). Here, Tyco has removed under the federal officer statute, which permits removal by
13 | "any officer (or any person acting under that officer) of the United States or of any agency
14 | thereof ... for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "To
15 | satisfy this requirement, a removing private entity must show that (a) it is a 'person' within the
16 | meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal
17 | officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'"
18 | DeFiore, 85 F.4th at 553 (citation and quotation omitted). "To establish such a nexus, the
19 | contractors 'must show: (1) that [they were] "acting under" a federal officer in performing some
20 | "act under color of federal office," and (2) that such action is causally connected with the
21 | [guards'] claims against [them].'" Id. at 554 (quoting County of San Mateo, 32 F.4th at 755).
22 |      The Ninth Circuit has "note[d] that courts afford § 1442 a generous and liberal
23 | construction, interpreting the statute broadly in favor of removal." DeFiore, 85 F.4th at 553
24 |

(citation and quotation omitted). "They do so because the statute vindicates . . . the interests of government itself in preserving its own existence." Id. (citation and quotation omitted). As such, Section 1442 "must be liberally construed," though its reach is "not limitless." Watson v. Philip Morris Cos., 551 U.S. 142, 147 (2007).

To assess the Motion to Remand, the Court must also apply the correct standard of review. "Challenges to the existence of removal jurisdiction should be resolved within th[e] same framework" as is used for Rule 12(b)(1) challenges to matter jurisdictional. Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014). "[A] plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations, triggering application of the rules discussed above for resolving such challenges." Id. A facial attack means that the Court accepts the allegations as true in the notice of removal. Id. But in a factual challenge, the defendant "must support its allegations with competent proof" and it "bears the burden of proving by a preponderance of the evidence that the [elements of the federal officer removal statute] . . . have been met." Id.

**B.    Tyco Fails to Provide Facts to Support the Causal Nexus Element of Removal**

The Court finds remand proper because Tyco has not identified any competent proof that would show by a preponderance of the evidence that MilSpec AFFF used at NAS Whidbey or the Airport has contaminated the Refinery.

As an initial matter, the Court finds that Marathon has mounted a factual attack to the causal nexus element of the federal officer removal statute. In its Notice of Removal, Tyco contends that PFAS from MilSpec AFFF used at the Airport and NAS Whidbey has reached the Refinery and entered the land through seawater intrusion. (Notice of Removal at 9-10.) Marathon has presented contrary evidence from Sarr, who opines seawater intrusion is not likely. He states

that the groundwater level is generally above sea level and that water on land actually flows out to the surrounding waters, rather than seawater intruding into the land. (Sarr Decl. ¶ 2.) He also opines that saltwater levels are far below the surface and that the Refinery does not operate any wells that would extract the seawater and deposit it onto the land. (Id.) As such, he concludes that "there is no potential for intrusion of saltwater due to well pumping." (Id.) This directly contradicts the allegations in the Notice of Removal that saltwater intrusion is to blame, and it triggers Tyco's burden to provide evidence to support its theory of contamination. See Leite, 749 F.3d at 1122.

Tyco has failed to provide any evidence that would show by a preponderance that the PFAS contamination at the Refinery is causally linked to MilSpec AFFF used at NAS Whidbey or the Airport. The primary problem is that Walker has not provided any opinion on a more-probable-than-not basis that seawater has intruded onto the Refinery land, as alleged in the Notice of Removal. Walker only opines that "[m]ultiple lines of evidence support the plausible inference that PFAS from Whidbey Island and the Airport may have not only reached the vicinity of the March Point Peninsula but may have also entered Marathon's property." (Walker Decl. ¶ 10; see id. ¶¶ 11-24.) But mere plausible inferences fall well below the preponderance standard, and his opinions do not create a material fact to support Tyco's theory that MilSpec AFFF has contaminated the Refinery. See Leite, 749 F.3d at 1122. This is further evident in the fact that Walker only identifies likelihoods of contamination that would require "detailed investigations that investigate the potential for seawater intrusion[.]" (Walker ¶ 11.) And while Walker identifies what he believes are gaps in Sarr's opinion, he himself has failed to provide evidence sufficient to support the causal theory Tyco espouses by a preponderance of the evidence.

1     Without factual support for the proposition that PFAS from MilSpec infiltrated the
2     Refinery, Tyco has not met its burden to show any causal nexus between its manufacture of
3     MilSpec AFFF and the contamination at issue. This is fatal to the federal officer removal,
4     because Tyco must show that its acts at the direction of a federal officer "is causally connected
5     with the [Marathon's] claims against [it]." DeFiore, 85 F.4th at 554 (citation and quotation
6     omitted). Tyco has not offered any facts that would show by a preponderance of the evidence
7     that there is a causal connection between the MilSpec AFFF used at the Airport and NAS
8     Whidbey and the PFAS contamination at the Refinery. On this basis alone, and without
9     considering the other arguments presented, the Court finds remand proper and GRANTS
10    Marathon's Motion.

**C.    Motion to Strike**

With its Reply, Marathon offered a new expert's opinion that it can differentiate the kinds of PFAS found at the Refinery. (See Reply; Declaration of Jason Phillips (Dkt. No. 32).) Tyco cries foul, and asks the Court to strike the filing and argument. (Surreply (Dkt. No. 33).) The Court agrees with Tyco. This information could have been presented with the Motion, and was not. It was not proper for Marathon to introduce these materials for the first time on reply, which deprived Tyco with an opportunity to respond. The Court therefore STRIKES the materials and has not considered them in resolving the Motion to Remand.

## CONCLUSION

The Court agrees with Marathon that the Court lacks subject matter jurisdiction and that the matter was not properly removed. Tyco has failed to meet its burden in the face of Marathon's jurisdictional challenge. The Court therefore GRANTS the Motion to Remand and REMANDS this matter to Skagit County Superior Court. Because this matter does not belong in

1  federal court, the Court DENIES as MOOT the Motion to Stay, which incorrectly presumes
2  federal subject matter jurisdiction. And because the matter shall no longer proceed in this
3  jurisdiction, the Court DENIES as MOOT the Motion to Extend.
4      The clerk is ordered to provide copies of this order to all counsel.
5      Dated September 3, 2025.

A  
Marsha J. Pechman  
United States Senior District Judge